WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taniela F Kivalu,<br><br>              Plaintiff,<br><br>v.<br><br>Axen Mortgage, et al.,<br><br>              Defendants. | No. CV-24-02441-PHX-KML<br><br>**ORDER** |

Plaintiff Taniela F. Kivalu filed a complaint and a request for leave to proceed in forma pauperis. (Doc. 1, 2.) Based on the financial information Kivalu provided, he is entitled to proceed in forma pauperis. However, when a plaintiff proceeds in forma pauperis "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Kivalu has not stated a claim for relief.

**I.  Background**

Kivalu filed his original complaint on September 16, 2024, and an amended complaint on September 26, 2024. (Doc. 1, 5.) Kivalu was entitled to amend his complaint once without obtaining consent from the other parties or a court order. Fed. R. Civ. 15(a)(1). The amended complaint is therefore the operative complaint.

The amended complaint alleges that in 2022, Kivalu contracted with defendant Axen Mortgage for a 30-year fixed mortgage. (Doc. 5 at 3.) The contract provided Kivalu's "Mortgage Insurance and Taxes" would be included in his monthly payment. (Doc. 5 at 3.)

Kivalu's original monthly payment, including insurance and taxes, was $1,691.27. Kivalu made monthly payments of $1,691.27 for two years after signing the agreement. (Doc. 5 at 4.) At some point after Kivalu and Axen Mortgage executed their agreement, Axen Mortgage arranged for defendant United Wholesale Mortgage, LLC, to service the mortgage, including collecting Kivalu's payments. (Doc. 5 at 3.)

On July 3, 2024, United Wholesale informed Kivalu that his monthly payment had increased by $206.22. (Doc. 5 at 4.) United Wholesale explained the increase was due to changes in "mortgage insurance and taxes." (Doc. 5 at 4.) That increase appears to be the entire basis for this suit. That is, Kivalu seems to believe his original mortgage contract did not allow for *any* increases in the monthly payment amount. (Doc. 5 at 4.) In August 2024, Kivalu sent a letter to United Wholesale requesting an explanation of the increase in his monthly payment. That letter also claimed Kivalu might "litigate and adjudicate [his] rights in this contract" and, if he were to do so, his "fees are set at $250,000/hourly." (Doc. 5 at 11.)

Based on these events the amended complaint asserts two possibly duplicative claims against Axen Mortgage and Wholesale Mortgage. First, it alleges a breach of contract claim and demands $150,000 in damages. Second, it alleges the "breach of contract reflected action [sic] of negligence, reckless disregard to the safety of the Disabled Veteran and welfare of others." (Doc. 5 at 5.) In addition to the $150,000 damages connected to the first claim, the amended complaint seeks punitive damages of $1.5 million and an additional "120.00 million" for attorneys' fees, "pain, suffering and humiliation." (Doc. 5 at 6.)

**II.     Analysis**

Kivalu may pursue his claims only if the amended complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant

has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

Kivalu is attempting to pursue breach of contract claims. To state a plausible breach of contract claim, Kivalu must allege facts establishing the existence of a contract, how that contract was breached, and the damages he suffered. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013) (recognizing elements of breach-of-contract claim). Kivalu has alleged he had a contract with Axen Mortgage, but it is not clear whether he believes that contract also included Wholesale Mortgage or if Kivalu had a separate contract with Wholesale Mortgage. Moreover, the amended complaint does not provide sufficiently plausible factual allegations that increasing Kivalu's monthly payments due to increases in insurance and taxes breached the underlying mortgage contract.

Kivalu's property taxes and insurance premiums are paid through an escrow account, a very common setup. *See Cantero v. Bank of Am., N. A.*, 602 U.S. 205, 210, 144 S. Ct. 1290, 1295, 218 L. Ed. 2d 664 (2024) (noting "the vast majority of home mortgages come with escrow accounts" that require the borrower make monthly payments and for the bank "to pay the borrower's insurance premium and property taxes on the borrower's behalf"). Given that insurance premiums and property taxes may differ year to year, most— if not all—mortgage contracts with escrow accounts allow for such changes to monthly payments. *Cf.* 12 C.F.R. § 1024.17 (discussing federal requirements for escrow accounts, including how lenders must adjust the amounts paid into escrow accounts). Given the high likelihood that Kivalu's mortgage contract allowed for changes to his monthly payments because of changes in insurance or taxes, the current allegations are not sufficient.

To state plausible claims for relief, Kivalu must allege specific facts showing that his mortgage contract prohibits any change to his monthly payments. The contract would need to specifically prohibit changes to the monthly payment when there are changes to

amounts owed for taxes or insurance. The court will grant Kivalu one opportunity to amend his complaint. If he chooses to amend, Kivalu must 1) identify the contract he has with each of the named defendants; 2) identify the exact contractual provision he is relying on as prohibiting changes; and 3) attach a copy of the contract.

Accordingly,

**IT IS ORDERED** the Application for Leave to Proceed In Forma Pauperis (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED WITH LEAVE TO AMEND**. No later than **October 16, 2024**, plaintiff shall file an amended complaint that includes a copy of the governing contract. The Clerk of Court is directed to enter a judgment of dismissal without prejudice in the event no amended complaint is filed by that date.

Dated this 2nd day of October, 2024.

Honorable Krissa M. Lanham
United States District Judge